RHYMES v. BOGGESS.*

(Division B.    March 28, 1927.)

[111 So. 844.    No. 26085.]

1. BILLS AND NOTES. *Agreement between payee and maker cannot prejudice rights of holder in due course.*

Any agreement between maker and payee of negotiable note does not operate to prejudice rights of holder before maturity.

2. BILLS AND NOTES. *Purchaser after maturity from holder in due course held not affected by agreement for cancellation between maker and payee (Negotiable Instruments Act, section 58).*

Under Negotiable Instruments Act, section 58 (Hemingway's Code, section 2636), purchaser of notes after maturity from holder in due course was not prejudiced by agreement, entered into between maker and payee in reference to cancellation of trade, in which notes were executed as consideration.

3. PLEDGES. *Releasing deed of trust from timber on land held sufficient consideration for transfer of purchase-money notes as security.*

Release of deed of trust from timber on land, conveyed by deed of trust, on condition that purchase-money notes for such timber be transferred as security for notes secured by deed of trust, *held* sufficient consideration for such transfer.

4. PLEDGES. *Holder of deed of trust, after releasing timber in consideration of transferring notes therefor as security, might recover against either owner or maker of timber note.*

Where holder of deed of trust released it from timber on land conveyed under such deed in consideration of transfer of purchase-money notes as collateral to note secured by deed of trust, recovery of balance of indebtedness could be had either from owner of land or maker of timber notes, either separately or jointly, since maker of timber notes was primarily and not secondarily liable for such balance not exceeding amount due on timber notes.

5. APPEAL AND ERROR. *Finding of chancellor, involving question of fact, will not be overturned, unless against weight of evidence.*

In order to overturn chancellor's decree on balance due on note, involving a question of fact, it is necessary that overwhelming weight of evidence show that chancellor's finding was wrong.

---

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, p. 900, n. 96; Bills and Notes, 8CJ, p. 466, n. 29; p. 467, n. 31; p. 468, n. 35; p. 742, n. 13; Pledges, 31Cyc, p. 796, n. 18; p. 830, n. 64.

APPEAL from chancery court of Noxubee county. Hon. T. P. GUYTON, Chancellor.

Suit by J. E. Boggess against R. L. Rhymes and others. Decree for complainant against defendant named, and he appeals. Affirmed.

*Frierson & Weaver,* for appellant.

I.   After Rhymes had paid the notes by thus refraining from cutting the timber and permitting it to revert, and failing to get his notes back, he was thereafter only an accommodation guarantor or endorser of the Cotton note.

II.   The decree itself shows that the judgment for one hundred twenty-three dollars and fifty cents was for the balance due on the Cotton note. Being such the judgment should have run against Cotton as the principal and Rhymes as secondarily liable.  When the bill was dismissed as to Elijah Cotton and Martha Cotton, they being the primary debtors, that dismissal *ipso facto* dismissed the bill as to R. L. Rhymes who was secondarily liable.

III.   After he had paid the debt to Elijah Cotton by refraining from cutting the timber and by permitting it to revert, Rhymes was an accommodation endorser or guarantor and as such endorser or guarantor a release of the forty acres "by the consent and at the instigation of Elijah Cotton and his wife, Martha Cotton," (as stated in the bill) dismissed as to Rhymes also.

Appellant's theory of this case was completely and perfectly established and borne out by the evidence. Appellant was only secondarily liable.   This suit comes within sections 2575 and 2576, Hemingway's Code, construed in *Wilkinson & Turney* v. *Tiffany, Duvall & Co.,* 5 How. 411, this case being followed in *Boush* v. *Smith,* 2 S. & M. 512; *Brunson* v. *Lea,* 5 S. & M. 149.

Appellant in his demurrer objected to the bill on account of its being multifarious.  The suit as originally brought was against Rhymes only, as a principal obligor. The chief ground on which the amended bill against him was based was that he was a principal obligor.  The appellee then added that "if" the complainant was mis-

taken in his being a principal obligor, then that judgment be granted against Cotton as the principal obligor and that the Rhymes notes be sold as collateral to the Cotton notes to pay the balance due thereon.

We urged in the demurrer and in the answer that these two causes of action were incompatible and not maintainable in the same suit. Section 358, Hemingway's Code, says that the uniting of several distinct and unconnected matters of equity in one bill against the same defendants shall not be an objection to the bill. But the things united in the bill in the case at bar did not come within this permission.

Since the demurrer was not sustained on this point and the evidence and results and decree demonstrated that appellant was not primarily liable, then the dismissal as to Elijah Cotton and wife was a dismissal as to appellant. *Wren* v. *Gayden,* 1 How. 365; *McNeil* v. *Burton,* 1 How. 510.

*I. L. Dorroh,* also, for appellant.

I. Our contention is now and has always been that appellee J. E. Boggess, acquired no title to the two notes in question for the reason that neither A. T. Dent, agent and attorney, nor Miss Velma Dent, had any power or authority in law to sell or re-assign the two notes in question held by Miss Velma Dent as collateral security and in support of this we cite 21 R. C. L. section 31, and section 48, page 688 and cases cited in note 20.

If Miss Velma Dent never had any authority to sell the notes of appellant, R. L. Rhymes, to appellee, J. E. Boggess, then Boggess could not have obtained any legal title to said notes, and he having no legal title to said notes, it follows that he had no legal right of recovery and it was an error of the chancery court to grant a decree rendering judgment against appellant for any sum whatever.

II.   The amended bill in this cause being vague, indefinite and duplicitous should have been dismissed by the chancery clerk.

One of the common-law rules of pleading which tend to produce unity in the issue is that pleading must not be double.   A declaration is double within this rule where it joins in one and the same count, different grounds of action of different natures or of the same nature to enforce a single right to recovery; or where it is based on different theories of the defendant's liability; or where the matter alleged is otherwise inconsistent and repugnant.   See 21 R. C. L., section 19, page 454; *Schwindt* v. *Lane Potter Lbr. Co.,* 135 A. S. R. 639; *Boyd* v. *Swing,* 38 Miss. 182.

III.   The court below erred in not sustaining the demurrer to the amended bill. The amended bill in this cause was so vague, indefinite and uncertain as not to notify the parties which of said defendants the complainant was relying on for recovery.   We feel that the ambiguity and indefiniteness of this amended bill constituted a good ground for demurrer and the said demurrer should have been sustained for that reason.   See 21 R. C. L., section 85, page 88; section 88, page 527; *Cunningham* v. *Smith,* 10 Grat. (Va.) 255, 60 Am. Dec. 333; *W. U. Tel. Co.* v. *Saunders,* 164 Ala. 234, 51 So. 176, 137 A. S. R. 35; 21 R. C. L. 454; *Schwindt* v. *Lane Potter Lbr. Co.,* 135 A. S. R. 639; *Roberts* v. *Stark,* 47 Miss. 257; *Darcy* v. *Lake,* 46 Miss. 109; *Milling Co.* v. *Nicholson Co.,* 24 So. 880; *Boyd* v. *Swing,* 38 Miss. 182.

The Rhymes notes could have been nothing more than a guaranty for Cotton's debts.   Boggess never acquired any legal right to the collateral because the notes of Rhymes payable to Elijah Cotton, or bearer, were delivered to A. T. Dent, agent and attorney for Miss Velma Dent, without any separate pledge agreement whereby neither Miss Velma Dent nor A. T. Dent, her attorney and agent, was authorized to transfer and assign the col-

lateral to Boggess. 21 R. C. L. section 33, page 671; 28
C. J., page 1007, section 169; *Chism v. Thompson,* 73
Miss. 410.

We take it for granted that it cannot be successfully
argued that the court did not commit a reversible error in
permitting the appellee to calculate, to collect, or attempt
to collect the attorney's fees on the full amount of the
indebtedness, and at the same time foreclose the secur-
ity using a trustee therefor. This is directly in the face
of the Elkin case reported in 92 Miss. 744, to which we
direct attention.

*H. L. Martin* and *W. W. Magruder,* for appellee.

It is a general rule that one taking negotiable paper
before maturity as collateral security is, for all practi-
cal purposes, the owner of it, a *bona-fide* holder for val-
ue, and may collect it, at least to the extent of the debt
for which it was pledged, without regard to the equities
between the original parties, whether arising out of the
original transaction or from subsequent dealings. In
Jones on Collateral Securities it is stated, "The pledgee
may even endorse payment of collateral paper upon its
maturity although the principal debt has not then ma-
tured," and the pledgee of a note may sue to enforce its
payment. See, also, *Eckert v. Searcy,* 114 Miss. 161.

On the purchase of the Cotton note and the two Rhymes
notes which were collateral security thereto, Boggess
took the debt and collateral on the same footing on which
it was taken by the original creditor, Miss Velma Dent,
being charged with the same duties respecting it and en-
titled to the same benefits therein. He stands, so to
speak, in the shoes of the seller and acquired the rights
of Miss Velma Dent as an innocent purchaser for value
of the Rhymes notes to an amount sufficient to satisfy the
Cotton debt for which they were originally pledged. It
was Boggess' duty to use reasonable and ordinary dili-
gence for their collection. When collected he has a right

to reimburse himself to the extent of his lien upon them; and if there had been any surplus, it was his duty to pay it over to the pledgor, Cotton.

We cannot see how the release can effect this case so far as Boggess, who stands in the pledgee's shoes, is concerned. The pledgee has a right to assign or sell collateral promissory notes with the debt for which they were originally pledged, and thereafter the assignee stands in his shoes. *Eckert* v. *Searcy,* 114 Miss. 161.

Counsel for appellant call the amended bill an anomoly and say that it is bad for duplicity, but it will be remembered that the appellant asked that this case be brought to the chancery court where all issues could be tried in one case and now he cannot be heard to complain.

ANDERSON, J., delivered the opinion of the court.

The appellee filed his bill in the chancery court of Noxubee county against the appellant to recover a balance claimed to be due appellee by Elijah Cotton and wife on a promissory note, owned and held by appellee by transfer from Miss Velma Dent, to whose order the note was payable, as collateral security, for the payment of which Elijah Cotton and wife had transferred to Miss Dent two notes of one hundred dollars each, which appellant had executed to Cotton and wife, and which collateral notes, in turn, had been transferred by Miss Dent along with the Cotton note to appellee. The cause was tried on bill, answer, and proofs, and a decree rendered in favor of the appellee against appellant in the sum of one hundred twenty-three dollars and fifty cents, from which decree appellant prosecutes this appeal.

There was no real conflict in the evidence as to the material facts. Cotton and wife were the owners of one hundred sixty acres of land in Noxubee county. On the 5th day of December, 1918, they borrowed three hundred dollars from Miss Dent through her agent, A. T. Dent, for the payment of which they executed their note,

negotiable in form, due twelve months after date, and to secure the same gave a deed of trust on their one hundred sixty acres of land. On November 29, 1920, Cotton and wife, the appellant, and A. T. Dent, the latter representing Miss Dent, agreed that Cotton and wife might sell and convey by deed to appellant the timber on their land, which they had mortgaged to Miss Dent, for two hundred fifty dollars; that to that end the timber on the land be released from Miss Dent's deed of trust, and appellant pay fifty dollars cash on the purchase price of the timber and give his two notes for one hundred dollars each, one due January 15, 1921, and the other April 1, 1921. The agreement was thereupon executed according to its terms, although a written release of the deed of trust was not executed by Miss Dent. These timber notes were negotiable in form, and were by Cotton and wife, in consideration of the release of the timber on the land by Miss Dent from her deed of trust, transferred to her as collateral security for the payment of their note to her of three hundred dollars. On November 21, 1924, the appellee purchased from Miss Dent the Cotton note and deed of trust for three hundred dollars and appellant's two timber notes of one hundred dollars each, held by Miss Dent, as further security for the payment of the Cotton note. At the time appellee purchased the Cotton note and securities for its payment and received a transfer thereof, the Cotton note, as well as the collateral notes, were overdue.

Prior to the time appellee became the owner of the cotton note and the securities for its payment, by transfer from Miss Dent, without the knowledge or consent of either Miss Dent or appellee, the appellant and the Cottons agreed to cancel the timber trade between them. The Cottons agreed to retain the timber not already cut from the land by appellant; the appellant agreed to return the timber he had already cut, and to surrender to the Cottons his timber notes of two hundred dollars. This agreement was not in writing, but was made orally and

was never executed. Appellee released forty acres of the land conveyed by the deed of trust of the Cottons, and the deed of trust was foreclosed on the remaining one hundred twenty acres, at which foreclosure sale the land was purchased by appellee for two hundred dollars, which amount was credited by appellee on the Cotton note. Cotton and his wife were made defendants to the bill. The court in its decree dismissed the bill as to the Cottons and rendered a decree in favor of the appellee against the appellant for the balance due on the Cotton note, which was less than the amount of appellant's notes of two hundred dollars, held by appellee as collateral security.

The appellant contends that, by virtue of the cancellation of the timber trade between the Cottons and him, he thereafter occupied the relation of an accommodation guarantor or indorser of the Cotton note. We are of the opinion, in the first place, that the evidence failed to show that there was any cancellation of the timber trade between the appellant and the Cottons; that, at most, the evidence showed there was an oral agreement to cancel the trade which was never carried out. The appellant had cut part of the timber on the land; the timber notes held by the appellee were not returned to the appellant; and no effort was made by the appellant to have them surrendered to him so far as the record shows; and, furthermore, under the law, no agreement entered into between appellant and the Cottons with reference to the timber notes could operate to prejudice the rights of appellee, the holder of such notes as collateral security for the payment of the Cotton note. The timber notes were negotiable in form; Miss Dent became holder thereof for value in due course before their maturity; and, as such holder, she was protected against any agreement between appellant and the Cottons with reference thereto which might prejudice her rights. Under section 58 of the Negotiable Instruments Act (Hemingway's Code, section 2636), the appellee, although the holder by pur-

chase and transfer of the notes after maturity, occupied exactly the same relation to the timber notes as did Miss Dent. That section of the Negotiable Instruments Act provides, among other things, that:

"A holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter."

It was held in *Bank* v. *McGrath*, 111 Miss. 872, 72 So. 701, that where a negotiable note is assigned before maturity as collateral for an indebtedness then made, the assignee becomes a holder for value of the same in due course, and such note is thereby freed from any defenses existing between the maker and the payee. It is true that appellant's timber notes were not transferred to Miss Dent to secure an indebtedness then incurred by the Cottons to Miss Dent. Nevertheless, a valuable consideration passed for such transfer, in that Miss Dent released her deed of trust from the timber on the land conveyed by the deed of trust on condition that the purchase-money notes of the appellant for such timber should be transferred to her as security for the Cotton note. Miss Dent's indebtedness against the Cottons was secured by a deed of trust on land, and also by the timber notes of the appellant. While she held the notes, Miss Dent had a right to resort to either or both of those securities to satisfy her indebtedness. As between Miss Dent and the appellant, the former was under no duty to resort to one of the securities in preference to the other. She had the choice, under the law, to enforce the payment of the Cotton note either by foreclosing the deed of trust on the land, or by enforcing payment of the appellant's timber notes, or she had the right to resort to the enforcement of both securities, if necessary. And, as between appellant and Miss Dent, the latter had the right, if she saw fit, to release her deed of trust entirely from the Cotton land and resort alone to the enforcement

of appellant's timber notes for the payment of her indebtedness, and, as the indorsee of Miss Dent, appellee succeeded to all of her rights in the matter. We are unable to see any element of guarantorship or suretyship growing out of appellant's relation to the transaction.

The appellant contends that the court erred in dismissing the bill as to the Cottons, without dismissing it as to the appellant, because the latter was only secondarily liable for the indebtedness due appellee. What we have already said disposes of this question. Appellee only could be prejudiced by the dismissal of the bill as to the Cottons, and, therefore, if the court erred in its dismissal, the appellee alone could complain. It is true that the Cottons were liable to appellee for the balance due on their three hundred dollar note held by the appellee against them, but it is also true that appellant was primarily and not secondarily liable to appellee for such balance, provided it did not exceed the amount due on the timber notes held by appellee as security for the Cotton note; the evidence showed there was more due on the former than the latter. Therefore, under the law, appellee had the right to recover the balance of the indebtedness due him either in a suit against the Cottons alone, or appellant alone, or the Cottons and the appellant jointly.

The appellant contends, further, that the court erred in rendering a decree against appellant for a greater amount than was due on the Cotton note. The balance due on the note involved a question of fact. There was sufficient evidence to sustain the finding of the chancellor that the balance due was one hundred twenty-three dollars and fifty cents. In order to overturn the decree as to the amount, it would be necessary for the overwhelming weight of evidence to show that the finding of the chancellor was wrong. We cannot say that the evidence so shows.

We see no merit in the other questions argued by appellant, and they do not appear sufficiently serious to call for a discussion.

*Affirmed.*